## LUNDIN v. ÆTNA INS. CO. OF HARTFORD, CONN.
### No. 4569.

Circuit Court of Appeals, Seventh Circuit.
March 30, 1932.

Rehearing Denied May 18, 1932.

960

W. L. Jackman and Harold M. Wilkie, both of Madison, Wis., for appellant.

Robert J. Folonie and C. Oscar Carlson, both of Chicago, Ill., and Francis J. Hart, of Milwaukee, Wis., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

Appellant brought this action to recover damages by him sustained, arising out of an alleged breach of a contract which the parties had negotiated. In his complaint, appellant joined two causes of action; one for damages resulting from a breach of contract, and the other for damages arising out of appellee's alleged negligent and careless conduct, which negligent conduct prejudicially impaired appellant's rights under said contract. A demurrer to the complaint was sustained, and a judgment dismissing the action followed.

Appellant alleges, among other things, that appellee is an insurance company which writes fire, hail, and tornado insurance on farm property; that appellant resided in Peshtigo, Wis., and was, during the period covered by the complaint, appellee's agent in Marinette County; that one Picard of the same county conducted an insurance agency and wrote farm insurance for companies other than appellee; that appellant purchased, for a valuable consideration, the insurance business of said Picard upon appellee's representations and agreement that it would assist in transferring as much of Picard's business to appellee as was possible; that appellee's representations caused appellant to enter into the contract with Picard, and such representations were to the effect that appellee would, through its own special agents, inspect and write such business in a careful manner and in a way acceptable to appellee, and, when so written, the policies "would not be disturbed"; that, after the contract was made, appellant assisted appellee's agents in rewriting much of Picard's insurance business with appellee company; that thereafter appellee "expressed dissatisfaction with the work done by its special agents in writing said business, and commenced a course of wholesale disturbance of said business, in violation of its said agreement. The state agent of appellee, after driving through the country, stated that the work of rewriting this business had not been properly done by appellee's special agents, and a large part of it at least would have to be re-adjusted and re-written so as to change amounts, property covered and other details. Appellant objected to such disturbance of the business. * * * Appellee, in the latter part of 1926, and in 1927, sent its own special agents into the field to place * * * modifying indorsements on the policies and readjust premiums, and also to re-inspect and re-examine and question and otherwise disturb the owners of said risks which had been written by its own agents, * * * *" etc. Damages resulting from this breach of the contract are alleged and claimed.

In the second cause of action, all of the allegations found in the first eight paragraphs of the first cause of action are set forth, and, in addition thereto, it is asserted that the agents, who represented appellee and who assisted appellant in transferring the Picard farm insurance business to appellant in appellee company, were negligent and careless in their inspections and in their descriptions of the property; and that the rechecking, reinvestigating, and rewriting of the policies caused the insured to become dissatisfied and appellant's business to be thereby damaged, etc.

■ It will thus be seen that the basis of appellant's first cause of action was the agreement that, after certain insurance was written by appellant and the authorized representatives of appellee, the policies "would not be disturbed" by appellee. Appellant asserts that there was a "wholesale disturbance of said business, in violation of its said agreement," which is merely the statement of a conclusion of the pleader, and must be limited to the specific acts which immediately followed this general allegation to the effect that such policies were rewritten so as to "change amounts, property covered and other details."

■ Assuming that the covenant not to "disturb" was sufficiently definite in its meaning to support an action for its violation, a contention which appellee vigorously disputes, we still cannot accept appellant's interpretation that the parties, by an agreement not to disturb the policies, intended that provisions of the insurance policy should remain unchanged regardless of inaccuracies in descriptions, insufficiencies of insurance protection, or an overcharge of premiums due to the overvaluation of the property insured. Statutory provisions respecting the terms and provisions of insurance policies in the state of Wisconsin may not be abrogated by the agreement of the parties. Temple v. Niagara Fire Insurance Co., 109 Wis. 372, 85 N. W. 361. The agreement must therefore be construed as meaning that the policies would not be disturbed, save as the law of the state of Wisconsin authorized or required. Surely the contract could not be construed as meaning that a policy, through mistake in the original valuation or through change in the construction of the building, must be carried at a sum far in excess of the value of the property, thereby entailing an added burden upon insured in the way of a premium. Likewise the agreement not to disturb a policy did not include denial of the company's right to cancel a policy, if the risk ceased to be an insurable hazard. The laws of the state of Wisconsin, Wis. Stats. § 203.01, lines 89–92, permit either the insured or insurer to cancel the policy upon written notice, and the parties must be presumed to have contracted with reference to, and subject to, such provision. The word "disturbed" must be construed in the light of these statutes.

■ The only specific acts of disturbance of which appellant complains are the investigation and the changing of the "amounts, property covered and other details." The

term "amounts" presumably refers to the amount of insurance written upon the property. "Property covered" means the descriptions of the property insured. "Other details" we can give no effect to because the term is too indefinite.

■ It was not a disturbance of the business as that term was used by the parties to change the amount of insurance to correspond to the true value of the property insured. Nor was it a disturbance of which appellant could complain to have the policy accurately describe the property insured. As we understand counsel, the serious basis of complaint is that appellee's agents made the investigation, appraised the value of the property, described the property insured, and that appellee should be, as it agreed to be, bound thereby. It could not, in view of the Wisconsin law, bind itself to this effect. To knowingly and continuously write and carry insurance in excess of the fair value of the property would have been a fraud upon other policyholders whose policies were honestly written. To carry insurance with property insufficiently or inaccurately described was likewise a fraud upon the insured, unless corrected when the company learned of the insufficient or inaccurate descriptions. Moreover, it would seem that the mistakes respecting amounts and descriptions of property were legally chargeable to appellant's, as well as appellee's efforts. At any rate, appellant's first cause of action is insufficient to base a recovery thereon.

The second cause of action presents a closer question. While referred to as one sounding in tort, it states a cause of action, if at all, for breach of contract. Genuine Panama Hat Works v. Webb (D. C.) 36 F. (2d) 265.

■ The court must, however, under the Wisconsin practice, pass upon the sufficiency of the allegations set forth in the complaint rather than look to the presence or absence of "recriminatory words sounding in tort," which the pleader may have used, to ascertain whether a good cause of action is stated. Sullivan v. Ashland L., P. & St. R. Co., 156 Wis. 445, 146 N. W. 506, 507; Noble v. Libby, 144 Wis. 632, 129 N. W. 791.

In the Sullivan Case, supra, the court said:

"On the subject of sufficiency it matters not what kind of a cause of action, by name, within the broad meaning of 'a civil action' the pleader attempted to state, or whether he attempted to state more than one cause

of action. It was not essential that he should do more than to state concisely the facts constituting his claim for redress; that is the civil wrong he believed had been caused to him. Neither was it essential that he should ask for the proper relief,—only that he should ask for 'such relief as he supposed himself entitled to.' Section 2646, Stats. Neither any misstatement as to the precise nature of the wrong, as classible by common law names, or misstatement as to the kind of relief, or mere indefiniteness of statement are of any particular moment, as regards either sufficiency of cause or proper joinder of causes of action. It matters not that the pleading could be reasonably construed so as to defeat it, upon one or other of the grounds of demurrer, or that even, gathering from it the general idea of the pleader, would defeat it. So long as giving to the language used the most liberal construction it will reasonably bear in favor of the pleader; not necessarily in favor of the pleader's idea of the form or scope of the redress, but the idea that a remediable wrong of a civil nature of some kind had been done to the plaintiff, it can be seen that some form and measure of judicial redress is due him, there is no fatal insufficiency."

■ As against a demurrer, the facts stated with labored elaboration and prolixity would seem to spell a cause of action. In reaching this conclusion, we have assumed that a cause of action is stated by A, an insurance agent, who alleged that he dealt with B, an insurance company, and was induced to purchase C's insurance agency upon B's agreement that it would send qualified agents to assist in changing C's customers from companies in which they were insured to policies in B; and who further alleged that B's representatives, engaged in making the exchange of policies, were to secure proper descriptions, make proper estimates of values of the farm property covered by the policies, and to generally so write the insurance that the policyholders would be satisfied with the new policies; and who further alleged that B's representatives failed to take ordinary care and precaution in rewriting the said risks and made numerous mistakes in descriptions and in valuations of the property covered by the insurance, because of which B found it necessary to reinspect and rewrite said insurance; and who further alleged that the policyholders became disgruntled and dissatisfied and refused to write their insurance through A's agency, and, because of which dissatisfaction growing out of the failure of B's representatives to do their work in a careful manner, A's business was damaged.

In this second cause of action allegations appear (scienter) which must be ignored as surplusage. Likewise damages are claimed which are not recoverable, because no tort action is stated. But the facts alleged do set forth a good cause of action for a breach of contract, and this is all that is required under the Wisconsin decisions.

■ Appellee contends that the judgment should be affirmed because no exception was taken to the ruling which sustained the demurrer to the amended complaint, and the record fails to show an election by the appellant to stand by his amended complaint. The decree recites:

"The demurrer to the first and second causes of action of the plaintiff's second amended complaint, having come on to be heard before the Court, * * * and the Court having heard the arguments of counsel and being fully advised in the premises, having sustained the demurrer to said first and second causes of action with leave to the plaintiff to plead over within ten (10) days, and the time within which the plaintiff was required to plead over having expired, and the plaintiff having failed to plead over within the time limited, * * *

"It Is Ordered, That plaintiff's amended complaint be and the same hereby is dismissed."

Under the Wisconsin practice it was neither necessary to file an exception to the ruling of the court on the demurrer nor to give formal notice of the pleader's election to stand by the complaint to which the demurrer had been sustained. Sections 263.12, 270.42, 263.46, Wisconsin Statutes; Schmidt v. Joint School District, 146 Wis. 635, 132 N. W. 583; Moritz v. Splitt, 55 Wis. 441, 13 N. W. 555; Hooker v. Village of Brandon, 66 Wis. 498, 29 N. W. 208.

Nor was it necessary in the federal court to note an exception to the court's ruling sustaining a demurrer. Nalle v. Oyster, 230 U. S. 176, 33 S. Ct. 1043, 57 L. Ed. 1439.

We also reject the contention that notice of election to stand by the pleading is a prerequisite to a right to review on appeal the District Court's ruling sustaining a demurrer. A departure from Wisconsin practice in this respect in a case arising in the federal court of Wisconsin would hardly be justified, in view of the Conformity Act (28 USCA § 724), unless we could satisfy ourselves that the practice adopted "promoted decision and

justice." Cyclopedia of Federal Practice, vol. 2, p. 592.

The judgment is reversed, with directions to proceed in accordance with the views here expressed.