## LITTLE v. KENNEDY.

### No. 5709.

Court of Civil Appeals of Texas. Amarillo.

May 20, 1946.

Rehearing Denied June 24, 1946.

R. L. Graves and W. W. Price, both of Brownfield, for appellant.

McGowan & McGowan, of Brownfield, for appellee.

PITTS, Chief Justice.

Appellee, R. C. Kennedy, filed suit in trespass to try title and to terminate a contract of sale of 320 acres of land situ-

ated in Terry County, Texas, alleging that appellant, J. J. Little, the purchaser, defaulted in the payment of that part of the purchase price due for the year 1944 and thus breached the contract, as a result of which appellee asserts he elected to exercise his option to terminate the contract and prayed for title and possession of the land.

The contract covers more than seven pages and is too lengthy to be copied here in full, but its most pertinent parts provide for the sale by appellee to appellant of 320 acres of land, with appellee reserving one half of the mineral rights; that the consideration is the delivery of one bale of cotton per acre, plus eight additional bales for the improvements on the premises, the bales of cotton to average five hundred pounds each and to be of at least $7/8$ staple and middling grade; that the payments are to be twenty bales of cotton delivered annually as it is ginned for sixteen consecutive years, beginning with the year 1937, and eight bales to be delivered on the seventeenth year; "that in case said cotton delivered is a better or inferior grade to middling with $7/8$ths staple, then the differentials applying to said community or territory shall apply to the price of said cotton, and the price thereof shall be increased or diminished accordingly, and the difference may be paid in other cotton in case of deficiency, and credit given for any excess"; that the purchaser has the right to pay more bales of cotton produced in a year if he elects so to do; that the purchaser will take possession by January 20, 1937, diligently cultivate the land, put in new land and fence it stock-proof, prevent the growth of Johnson grass, keep up the improvements and keep them insured, and pay all taxes; that all improvements thereon, or later placed on the land by purchaser, are and must remain as a part of the realty and cannot be removed by purchaser; that unless purchaser defaults in the payments or breaches the terms of the contract, he will remain in possession of the land until it is paid for, at which time seller will convey good title to him; that the purchaser agrees to plant annually 300 acres of cotton, on which seller holds a lien to secure payments for that year, and

purchaser agrees further to execute a first mortgage early in January of each year on one half of the cotton crop to secure any payments due or past due; that seller reserves the right to lease the land for minerals during the life of the contract, with purchaser to receive credit for one half of the mineral rentals, to be applied on the purchase price of the land; "and in the event of the payment of any sums of money or other commodities rather than cotton on the purchase price of said lands, it is agreed that said cotton shall be deemed of the value of 10¢ per pound"; that if purchaser is prevented by drought, crop pestilence, or hail from producing or gathering a cotton crop and if it appears to both parties that it is too late to harvest a cotton crop, purchaser may then plant the land in feed, with seller retaining a lien on it, harvest and sell the feed with the consent of the seller and apply the proceeds "on the quota of cotton which may be due during said year on the purchase price of said lands"; and that if the purchaser defaults in any payments or breaches any terms of the contract, the seller has the right to terminate the contract and the purchaser becomes a tenant at sufferance upon said land.

There arose a controversy over the settlement of that part of the purchase price due in the year 1944 and the same resulted in the filing of this suit, which was tried to a jury that found, in answer to special issues submitted by the trial court, that the season for planting cotton on the said land for the said year was not good and that appellant planted 120 acres in cotton but it failed by reason of a drought. Both parties had asked for peremptory instructions. Appellant filed a motion for judgment on the findings of the jury, and appellee filed a motion for judgment non obstante veredicto. The trial court overruled appellant's motion for judgment, but sustained appellee's motion for judgment non obstante veredicto.

The uncontroverted evidence and the record disclose that appellant, then seventy-eight years of age, had occupied the land for the previous years since 1937, paid all taxes on it, and made the annual payments until he had an equity of more than eight

thousand dollars in the land; that Government regulations had intervened during the war and prevented the planting of the full 300 acres of cotton for several years; that other conditions had prevented a satisfactory settlement between the parties for most of the previous years, resulting in controversies, lawsuits, and compromise settlements, all of which, at the time of the trial, was "water over the dam"; that appellee had leased the land for minerals in 1938 for fifty cents per acre and appellant had previously received an annual credit of $80 per year; that the mineral lease on one half of the land had been forfeited late in 1943, leaving only $40 annual mineral rental for each party, but appellant did not learn about the said forfeiture until during the trial; that on January 19, 1945, appellant placed to his own credit in a special account in the First National Bank of Brownfield $920, marked and designated it for the purpose of using it, together with the usual $80 mineral rental, in making the annual payment to appellee on the land for 1944; that the said bank was the usual and customary place through which, and the officers of the bank the usual and customary persons through whom, former payments had been made on the land; that in his pleadings appellant pleaded "not guilty" and further pleaded the terms of the contract and tendered to appellee the payment of $920 in cash together with the $80 rental money, and when he learned that one half of the mineral lease had been forfeited, leaving his interest in the same only $40, he tendered in open court the sum of $960 in cash, together with the credit for the $40 lease money, making a total tender of $1000; that the tender was refused by appellee, who testified that no such tender had been made to him by appellant prior to the filing of the suit but that he would have refused it if such tender had been made to him. He further testified that he would not have used the money if it had been placed to his credit in the bank in the sum tendered.

The trial court based its judgment on the findings of the jury, together with additional findings it made as a result of the uncontroverted evidence, its findings being consistent with the facts heretofore stated in the former paragraph, together with other findings hereinafter referred to.

Appellant presents seven assignments or points of error, each of which is challenged by appellee, but it appears to us that a proper construction of the terms of payment as provided for in the contract will solve the issues here raised by the parties.

Both parties admit that the terms of the contract provide that if and when cotton cannot be grown and harvested and annual payments cannot be made in cotton, the proceeds of the sale of feed grown on the land in lieu of cotton may be applied on the quota of cotton which may be due on the purchase price for such year. But appellant contends that the contract provides that the quota of cotton for such year is fixed at the sum which twenty bales of cotton, weighing five hundred pounds each, would bring at a sale for ten cents per pound, or the twenty bales of cotton at a price of $50 per bale, either of which would be $1000; while appellee contends that the contract provides that the quota of cotton for such years would depend upon the price of cotton for that particular year, and that the price of cotton at Brownfield for the year 1944 was twenty cents per pound and that appellant's payment for the year 1944 should therefore be $2000.

The trial court further found that under the uncontroverted evidence the fair market value of cotton at Brownfield in 1944 was $100 per bale and that appellant's annual payment for 1944 was $2000; that appellant had not tendered any sum to appellee prior to the filing of the suit on August 9, 1945, in payment of the amount due for the year 1944; that a tender was made by appellant at the trial in the sum of $960 cash together with $40 mineral rental, making a total of $1000, but that appellee would not accept it and would not have accepted such tender if it had been made to him prior to the filing of the suit. For these reasons the trial court found that appellant defaulted in the 1944 payment and failed to carry out the terms of the contract, and rendered judgment for appellee for possession of the land.

■■ In construing the terms of a contract it is generally held that the intent of

the parties must be gathered primarily from a fair consideration of the whole instrument, harmonizing, if possible, each part with every other part of the contract, and that all parts of the instrument must be given effect when possible. Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442; Fleming v. Ashcroft, 142 Tex. 41, 175 S.W.2d 401. Applying that rule to the contract in the instant case, we find that the contract provides that the whole consideration is 328 bales of cotton which must weigh an average of 500 pounds each and must be of not less than 7/8 staple and of a grade as good as middling and must be delivered twenty bales each year as it is ginned; that if the said cotton so delivered (and only in the event that payments are made with cotton) is inferior to middling grade with 7/8 staple as compared with other cotton grown that year in that community or territory, the difference shall be made up and paid in other cotton, but if the said cotton so used to make the payments is better than middling grade with 7/8 staple as compared with other cotton grown that year in the community or territory, a credit must be given on the payments for the excess; but in case cotton cannot be grown some years on account of drought, hail, or crop pestilence feed may be grown and the proceeds from the sale of the feed applied on the quota of cotton for the purchase price of said year, and one half of any mineral rentals made on the land may likewise be applied on the purchase price to appellant's credit. Such credits for mineral rentals may be applied in lieu of cotton and it is agreed that in such event the value of a bale of cotton shall be $50 and it is also agreed that if the payments on the purchase price of the said lands are made with "sums of money or other commodities rather than cotton," the cotton "shall be deemed of the value of 10¢ per pound."

Appellee contends that the contract provides that in case the payments are made out of the proceeds from the sale of feed grown on the land, the amount of the payments due on the purchase price of the land for such year shall be determined by "the then prevailing price of cotton," but we are unable to place such construction on any of the terms found in the contract.

We believe the payment due by appellant for the year 1944 under the terms of the contract and the findings made should be fixed under the provision authorizing payment with "sums of money or other commodities rather than cotton," and should be determined by the result found in figuring the value of twenty bales of cotton weighing five hundred pounds each at "10¢ per pound," or the sum of $1000. It appears to us that the parties themselves have so construed the contract in making the 1941 payment. We find credit for only one payment on the copy of the contract offered in evidence and its recitations are as follows, to-wit: "1-29-42 Paid 920.00 in cash and 80.00 oil rental totaling 1000.-00 which is crop raise settlement in full for year 1941. RCK." The record does not disclose the amount of any other annual money settlement. Certainly we do not find any basis, either in the terms of the contract or by a previous established custom in making the annual payments, for requiring an annual payment of $2000 for any year, and we believe the trial court erred in finding the required payment for the said year to have been $2000.

■ The record fails to disclose that appellee ever made demand upon appellant for the 1944 payment, if such was ever made. The contract made no provision for the date or place of making annual payments from the proceeds of the sale of feed or other money payments. It made no provision for the time or place of making annual payments of any kind except that when made in cotton, the same should be delivered to appellee at Brownfield, Texas, as ginned. However, appellant concedes that under such circumstances payments should be made within a reasonable time and on January 19, 1945, he deposited the money for the 1944 payment in the Brownfield bank at the usual place and with the usual bank officials through whom former annual payments had been made. He deposited only $920, believing that appellee already had the usual $80 annual mineral rental, as was the case in 1941 at least, but as soon as he learned that late in 1943 the mineral rental had been reduced to $40 to his part, he then tendered in open court the sum of $960 to appellee, who

admits the tender of $1000 in open court but who declined to accept it and said he would not have accepted it if it had been tendered to him prior to the filing of the suit.

The record shows without controversy that it was an executory contract and that appellant stood ready to comply with its terms and was able to do so and that he placed what he thought was sufficient money to make the required payment for 1944 in the bank through which payments had been previously made and stood ready to release it to appellee in settlement of the 1944 payment, just as the 1941 payment had been made

■■■ Under the record we do not think it should be held as a matter of law that the contract has been breached by appellant and a rescission declared. Rescission, as sought in this case, is a harsh remedy and will not be upheld unless the relative equities, when weighed, clearly favor the party seeking rescission. He who seeks a rescission of such a sales contract and a forfeiture must offer to do equity or he will be defeated. Burkhardt v. Lieberman, 138 Tex. 409, 159 S.W.2d 847; Kauffman v. Brown, 83 Tex. 41, 18 S.W. 425; 43 Tex.Jur. 355, Sec. 204. In the instant case appellee sued for a termination of the contract without offering to do equity, when the undisputed evidence shows appellant has considerable equity in the land in question. Under appellant's plea of "not guilty" and under the record and the authorities last cited herein, we believe appellant has the right to pay appellee the $1000 tendered in open court in satisfaction of the 1944 payment.

Because of our foregoing conclusions we do not consider it necessary to pass on appellant's other assignments of error.

It is our opinion that the trial court, under the findings of the jury and its own findings as a result of the uncontroverted evidence, should have rendered judgment for appellee only for the $1000 tendered by appellant at the trial, together with the cost as it accrued in the trial court. It likewise appears to us that there is little controversy over the facts, which have been fully developed, and jury findings made on all controverted facts. We therefore reverse the cause and render judgment denying the relief sought by appellee but in his favor for $1000 and, there being no question from the record and the briefs that the tender is available, we direct the clerk of the trial court to accept, and pay to appellee, the $960 tendered to the trial court, which sum together with the $40 rental credit tendered satisfies the judgment except for the costs, and we adjudge against appellant the costs accrued in the trial court, and against appellee the costs accrued as a result of the appeal.

On Motion for Rehearing.

PER CURIAM.

■■■ Although appellee says he would not have accepted the tender nor used it if appellant had deposited the thousand dollars, the amount actually required to be paid for said year under the terms of the contract, to his credit in the bank, he still complains in his motion for rehearing because the tender was not actually made prior to its being made by appellant in the trial court. We believe the tender made by appellant in his pleadings and in open court met the requirements of the law in such cases according to the authorities last cited in the original opinion.

■■■ Appellee likewise charges that he has been awarded something by this court for which he did not ask and that there are no pleadings to support our judgment. Appellant pleaded not guilty and further pleaded the terms of the contract, that he had not defaulted in its terms but had complied with the same, made a tender of one thousand dollars to appellee and it is admitted that he renewed his tender at the trial. The judgment rendered by this Court is therefore supported by appellant's pleadings and it is a well established rule in this state that a judgment is authorized if it is supported by the pleadings of either party to a suit. Whittington v. Glazier, Tex.Civ.App., 81 S.W.2d 543 (writ refused); Ramsay v. Rouse, Tex.Civ.App., 68 S.W.2d 317 (writ refused).

■■■ Appellee further complains that our construction of the contract in question is "unfair and unjust" and "works an

injustice on appellee." Our reply to such complaint is taken from appellee's brief in his attempt to support the judgment of the trial court where he correctly stated a rule of law as follows:

"The law leaves the contract just where the parties themselves have put it, and the court will enforce it as made, without regard to questions as to whether the parties contracted wisely or foolishly, or as to whether, in the light of subsequent events, a hardship may be worked."

He supported such rule by the following authorities: Rankin v. Rhea, Tex.Civ. App., 164 S.W. 1095; Moore-Seaver Grain Co. v. Blum Milling Co., Tex.Civ.App., 264 S.W. 551; Blair v. Bird, Tex.Civ.App., 20 S.W.2d 843; 10 Tex.Jur. 279, Sec. 163.

We have carefully examined appellee's motion for rehearing and the same is overruled.