**Jimmy B. MYERS, Petitioner,**

v.

**GULF COAST MINERALS MANAGEMENT CORPORATION, Respondent.**

**No. A–8994.**

Supreme Court of Texas.

Oct. 3, 1962.

Rehearing Denied Oct. 24, 1962.

Nye, Cohn & Morris, Corpus Christi, for petitioner.

King, Anderson & Porter, Corpus Christi, for respondent.

SMITH, Justice.

In September, 1960 Myers and Gulf Coast entered into a contract, commonly referred to as a farmout agreement or letter agreement. Myers alleged, in this suit, that on September 28, 1960, he offered Gulf Coast certain rights, title, and interest in and to a certain oil and gas leasehold estate on specified terms and conditions in writing, and that Gulf Coast accepted the offer and paid the sum of $500.00 immediately upon acceptance of the terms and conditions of the contract, but failed to comply with the terms of the contract by paying the additional sum of $2000.00 within 30 days from the date of acceptance or commencement of drilling operations, whichever was sooner, as provided in the contract. Hence, this suit to recover of and from Gulf Coast the sum of $2000.00, with interest at the rate of 6% per annum from November 6, 1960 until paid. On January 16, 1961, Gulf Coast filed a general denial and prayed that Myers take nothing by his suit.

On February 7, 1961 Gulf Coast filed its motion for summary judgment based upon the contention that there was no genuine issue as to any material fact and that it was entitled to judgment as a matter of law upon the pleadings on file and a letter agreement between the parties. A copy of the letter agreement was attached to the motion for summary judgment. On February 23, 1961 Myers filed an affiadvit with a copy of the letter agreement attached, and on March 24, 1961, in a motion for summary judgment, alleged that there

was no genuine issue as to any material fact in the case and that he was entitled to judgment as a matter of law.

On May 9, 1961 the trial court granted Myers' motion for summary judgment, and the judgment entered recites that the court found that the pleadings, opposing affidavits and the letter agreement, attached as an exhibit to both motions, showed an absence of any genuine issue as to any material fact and that summary judgment should be rendered for Myers as a matter of law. Gulf Coast's motion for summary judgment was overruled. On Appeal, the trial court's judgment in favor of Myers for $2000.00 and interest at the rate of 6% per annum from November 6, 1960 was reversed and judgment was rendered that Myers take nothing by his suit, thus sustaining Gulf Coast's motion for summary judgment. Tex.Civ.App., 354 S.W.2d 944.

We have concluded to sustain the judgment of the trial court for the reasons now to be stated.

The farmout agreement contains an introductory paragraph,[1] being the recital portion of the contract, and numbered oper-

ative paragraphs 1,[2] 2,[3] and 6,[4] and we are directly concerned with the meaning of these paragraphs, including the introductory paragraphs, in determining the true meaning of the contract.

The Court of Civil Appeals has held that the words "may earn" found in the recital portion of the farmout agreement were permissive rather than compulsive. The court, apparently having made the recital paragraph controlling over the operative paragraphs of the agreement, went on to hold that the agreement meant that Gulf Coast could either gain the rights or lose them as it willed, citing the cases of State v. Clements, Tex.Civ.App., 319 S.W.2d 450, (1958), wr. ref., and Kleck v. Zoning Board of Adjustment of San Antonio, Tex.Civ. App., 319 S.W.2d 406, (1958), wr. ref., in support of its holding.

In the case of State v. Clements, supra, the court was called upon to construe a 1956 amendment to the Texas Constitution. The amendment added Section 51–c to Article III, Vernon's Ann.St., and provided that the Legislature *may* grant aid and compensation to any person who had theretofore paid a fine or served a sentence in prison

1. "This letter when accepted by you will evidence the understanding and agreement by and between Gulf Coast Minerals Management Corp., whereinafter called "Gulf Coast", and Jimmy B. Myers, under which agreement, Gulf Coast may earn certain rights, title and interest in and to that certain leasehold estate, hereinafter described, subject to the reservations hereafter contained, all in accordance with the following terms and conditions, to wit:

2. "1) Gulf Coast agrees to pay the sum of $500.00 to Jimmy B. Myers upon acceptance of this agreement; and the additional sum of $2,000.00 within 30 days from the date of this agreement is accepted, or when drilling operations are commenced, as hereinafter provided, whichever is the sooner.

3. "2) Within 60 days from September 27, 1960, Gulf Coast agrees to move in and commence drilling operations for a test well in accordance with the terms and conditions of this agreement and the

hereinafter described oil, gas and mineral lease, as amended a copy of which lease and amendment is attached hereto and the terms thereof, made a part of this agreement. Such drilling operations shall be conducted at the sole risk, cost, and expense of Gulf Coast in an effort to obtain production as a reasonable and prudent operator would do and shall be prosecuted to a minimum depth of Five Thousand Seven Hundred Feet (5,700') unless oil and/or gas in paying quantities are found at a lesser depth.

4. "6) In consideration of the full and satisfactory compliance by Gulf Coast with all of the terms and provisions hereinabove set out and upon completion of a well capable of producing oil and/or gas in paying quantities, Jimmy B. Myers agrees to assign to Gulf Coast Minerals Management Corp. the oil, gas, and mineral lease, dated September 1, 1960 from Emil Pillack, et ux, Lessor, to Jimmy B. Myers, Lessee, covering the following described land in Jim Wells County, Texas, to-wit: * * * "

under the laws of this State for an offense for which he was not guilty. The court simply determined that the word "may" as first used in the Constitutional Amendment, and as later used in connection with the word "deem" in the amendment, was permissive in meaning and that obviously the amendment was not self-executing. Kleck, supra, was a zoning ordinance case, the court holding being that where a municipal zoning ordinance provided that noncommercial parking lots "may be permitted", the word "may" was merely permissive and the Zoning Board of Adjustment had the right to use its discretion in granting or denying applications for noncommercial parking lot permits, subject to the limitations, conditions, and restrictions set out in the ordinance. This holding refuted the contention of the applicant for a noncommercial parking lot permit that where the ordinance said parking lots for noncommercial parking "may be permitted" it meant "must be permitted". In rejecting this contention, the court said that to adopt Kleck's theory would be to hold that the Zoning Board had no discretion in the matter, but must grant a proper application as a matter of right.

■ It is to be noted that by refusing the application for writ of error in each of these cases, this court adopted the opinion in each case as its own. Our approval of these cases still stands. However, we decline to follow the holding of the Court of Civil Appeals that the holdings in those cases are decisive of the question we are called upon to decide by this appeal. We do not mean by this to say that the rules of construction of written contracts which we consider applicable here were not applied in those cases. In the present case, we are to be governed by the universal rule in this jurisdiction that an instrument, such as the farmout agreement involved here, must be viewed in its entirety and that no single portion, sentence, or clause when considered *alone* will control. We have no doubt but that this rule was implicitly

followed by the court in both the Clements and Kleck cases and a correct construction was made of the instruments under consideration. The result reached in those cases, however, does not necessarily mean that the same result should obtain in this case. The courts are to ascertain the real intention of the parties, and the very nature of the inquiry dictates that there can be no fixed rule, for every case, in a great measure, depends upon its own facts, the context of the instrument, and circumstances. It is elementary that if there is no ambiguity, the construction of the written instrument is a question of law for the court. See Turner v. Montgomery, Tex.Com.App., 293 S.W. 815; North v. North, Tex.Civ.App., 2 S.W.2d 481, 483; Brown v. Payne, 142 Tex. 102, 176 S.W.2d 306, 308.

The Court of Civil Appeals has stated that the term "may earn" was not compulsive, but instead was permissive, and based upon that premise, that court has held that Gulf Coast was under no duty to pay the $2000.00, and that the " * * * contract gave it the power, if it so willed, to make that payment and commence drilling and thereby gain the rights stated in the contract." In effect, the court has held that the contract amounts to no more than an option permitting Gulf Coast, the obtainer of the farmout, to do certain things, but that under the terms of the farmout agreement, Gulf Coast was not required to do anything. The holding upholds the contention of Gulf Coast that the only agreement was that Gulf Coast *could* earn *if* it complied with the conditions listed, and that the failure to pay the sum of $2,-000.00, the second condition listed, rendered the farmout agreement void and ineffectual as far as Gulf Coast was concerned. With this we cannot agree.

■ Myers contends that the Court of Civil Appeals in construing the term "may earn" contained in the recital or introductory paragraph of the farmout agreement, adopted a limited choice of definitions from

which to determine the one meant by the contract, as evidenced by its statement that the term "may earn" was not compulsive, but instead was permissive. Myers argues that the term "may earn" can equally express the conditions of competency, ability, possibilty, probability or contingency, Black's Law Dictionary, 3rd Addition, p. 1171, as well as permission, and upon such premise, he contends that when the term "may earn", as used in this farmout agreement is defined as showing possibility or contingency, it is more in keeping with the intent of the parties than the definition of permissiveness found by the Court of Civil Appeals. We agree. The definition of "may earn" adopted by that court violates the rule that the courts in construing contracts are to determine the intention of the parties from the contract as a whole and then adopt that definition which is most consistent with such intent and will render the questioned term harmonious with, rather than repugnant to, the other provisions of the contract. See Fleming v. Ashcroft, 141 Tex. 41, 175 S.W. 2d 401; General Insurance Corporation v. Laney, Tex.Civ.App., 224 S.W.2d 746, 751 [5] (1949), no wr. hist.; Little v. Kennedy, Tex.Civ.App., 195 S.W.2d 255 (1946), wr. ref. n. r. e.

■ The introductory or recital paragraph, which contains the term "may earn" should be reconciled with the operative clauses and given effect, so far as possible. 17 C.J.S. Contracts § 314, p. 733, but the primary duty of the courts in construing contracts is to ascertain and effectuate, if possible, the mutual intention of the parties at the time of the execution of the contract. By giving the term "may earn" the meaning heretofore outlined, we find that the unambiguous operative paragraphs clearly provide that Myers by the farmout agreement granted Gulf Coast certain valuable rights to explore and drill for oil and gas and the further right to receive from Myers an assignment of a part of the leasehold estate *if production were obtained*. The consideration flowing from Gulf Coast to Myers for such valuable rights acquired was, first, the payment of $500.00, and the promise to pay the further sum of $2000.00. It should be noted that numbered paragraph 1 does not say that Gulf Coast *may* pay $2000.00. It says that Gulf Coast *agrees* to pay $500.00 and $2000.00. There is no language in either the recital or introductory paragraph or in the operative paragraphs of the farmout agreement which can be construed to give Gulf Coast the right to pay *at will*. The express language in the operative portion of the contract makes it clear that it was not the intention of the parties that Gulf Coast could *at will* "make that payment of $2,000.00 and *commence drilling*" and *"thereby gain* the rights stated in the contract." [Emphasis added.] The term "may earn", used in the contract in its conditional or contingent sense, did not render conditional the obligation to pay the $2,000.00. The words "at will" used by the Court of Civil Appeals are not used anywhere in the farmout agreement. Operative paragraph numbered 6 is the only paragraph containing language whereby Myers was obligated to make an assignment of an interest in the oil and gas lease, but it contains no language that by making the payments provided for in numbered paragraph 1 and by the commencement of drilling as provided for in numbered paragraph 2, Gulf Coast would *thereby gain the rights stated in the contract*. The farmout agreement when considered in its entirety recognized that the right of Gulf Coast to an assignment was speculative and contingent in that it was further conditioned upon production of oil and/or gas and other minerals in paying quantities. In other words, under our construction of the farmout agreement, including our definition of the term "may earn", Gulf Coast was obligated to pay to Myers the full consideration of $2,500.00 even though the drilling operations later resulted in no production due

5. This case discusses a collection of Supreme Court cases.

to the existence of physical and geological circumstances beyond the will and control of either Myers or Gulf Coast.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

GRIFFIN, Justice (dissenting).

I agree with the opinion of the Court of Civil Appeals.