NO.
12-04-00142-CV

 

                     IN THE COURT
OF APPEALS 

 

          TWELFTH
COURT OF APPEALS DISTRICT

 

                                TYLER, TEXAS

HEALTHCARE
CABLE SYSTEMS, INC.,  §                 APPEAL FROM THE 188TH

APPELLANT

 

 

V.                                                                         §                 JUDICIAL DISTRICT COURT OF

 

THE GOOD SHEPHERD HOSPITAL, INC.

d/b/a GOOD SHEPHERD MEDICAL CENTER,

APPELLEE                                                       §                 GREGG COUNTY, TEXAS

                                                                                                                                                           


                                                                      OPINION

Healthcare
Cable Systems, Inc. appeals the trial court’s order granting The Good Shepherd
Hospital, Inc. d/b/a Good Shepherd Medical Center’s motion for summary
judgment.  HCS raises three issues on
appeal.  We reverse and remand in part
and affirm in part.

 

Background

On
August 3, 1994, HCS and Good Shepherd entered into a Television Services
Agreement whereby HCS would provide cable television services to Good
Shepherd.  The contract stated that the
agreement term was to be for “a period of five (5) years commencing on the
Operational Date and ending five years from and after such date.”[1]  “Operational Date” is defined by paragraph
2.4 of the contract as follows:








The equipment and related parts, accessories, and
supplies shall be installed at HCS’s sole cost and expense, on or before ninety
(90) days from the date HCS receives an executed counterpart of the Agreement
from Hospital (“Operational Date”) . . . . 

 

 

The parties
signed the agreement on or before October 31, 1994.  HCS installed the necessary equipment and
commenced service within weeks thereafter.

In
December 1998, the parties executed an agreement containing identical language,
but for the addition of an investor as a party to receive notice pursuant to
the agreement.  Thereafter, the business
relationship between Good Shepherd and HCS deteriorated.

Good
Shepherd filed suit on November 1, 2001 seeking a declaratory judgment that the
operational date of the contract executed in December 1998 was the same date as
it was for the 1994 contract—the date when the equipment was installed.[2]  Before Good Shepherd’s petition was served on
HCS, HCS filed suit for breach of contract and served Good Shepherd with
citation.  In its petition, HCS alleged
that the 1998 document had a five year term commencing on December 16, 1998,
the date it was signed by Good Shepherd. 
The two cases were consolidated with Good Shepherd as plaintiff.

Good
Shepherd filed a motion for partial summary declaratory judgment on August 12,
2003 and later sought to file additional evidence in support thereof.  HCS responded to Good Shepherd’s motion and
objected to its supporting evidence and its motion for leave to file additional
evidence.  HCS also filed a motion for
summary judgment as to its breach of contract counterclaim, to which Good
Shepherd responded.  In its motion, HCS
argued that the operational date of the agreement occurred within ninety days
from the date HCS received an executed counterpart of the contract.  Ultimately, the trial court granted Good
Shepherd’s motion for summary declaratory judgment and denied HCS’s motion for
summary judgment on its breach of contract claim.    In its order, the trial court stated that the
operational date of the agreement between the parties was no later than
October 31, 1994 and that the agreement expired no later than October 31,
2000.  This appeal followed.

 








Summary Judgment

In
its first issue, HCS argues that the trial court erred in overruling its motion
for summary judgment concerning its allegations of breach of contract.  In a portion of its second issue, HCS argues
that the trial court erred in granting Good Shepherd’s motion for summary
declaratory judgment.  In reviewing a
traditional motion for summary judgment, this court must apply the standards
established in Nixon v. Mr. Property Management Co., 690 S.W.2d
546, 548‑49 (Tex. 1985), which are as follows:

 

1.             The movant for summary judgment has the burden of
showing that there is no genuine issue of material fact and that it is entitled
to judgment as a matter of law.

 

2.             In deciding whether there is a disputed material fact
issue precluding summary judgment, evidence favorable to the nonmovant will be
taken as true.

 

3.             Every reasonable inference must be indulged in favor of
the nonmovant and any doubts resolved in its favor.

 

 

See id.;
May v. Nacogdoches Mem’l Hosp., 61 S.W.3d 623, 628 (Tex.
App.–Tyler 2001, no pet.).  For a party
to prevail on a motion for summary judgment, he must conclusively establish the
absence of any genuine question of material fact and that he is entitled to
judgment as a matter of law.  Tex. R. Civ. P. 166a(c).  A movant must either negate at least one
essential element of the nonmovant's cause of action or prove all essential
elements of an affirmative defense.  See
Randall's Food Mkt., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex.
1995); see also MMP, Ltd. v. Jones, 710 S.W.2d 59, 60
(Tex. 1986).  Since the burden of proof
is on the movant, and all doubts about the existence of a genuine issue of a
material fact are resolved against the movant, we must view the evidence and
its reasonable inferences in the light most favorable to the nonmovant.  See Great Am. Reserve Ins. Co.
v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).  We are not required to ascertain the
credibility of affiants or to determine the weight of evidence in the
affidavits, depositions, exhibits, and other summary judgment proof.  See Gulbenkian v. Penn, 151
Tex. 412, 252 S.W.2d 929, 932 (Tex. 1952). 
The only question is whether or not an issue of material fact is
presented.  See Tex. R. Civ. P. 166a(c).








Once
the movant has established a right to summary judgment, the nonmovant has the
burden to respond to the motion for summary judgment and present to the trial
court any issues that would preclude summary judgment.  See, e.g., City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 678-79 (Tex. 1979).  All theories in support of or in opposition to
a motion for summary judgment must be presented in writing to the trial
court.  See Tex. R. Civ. P. 166a(c).

 

Contractual Construction

            In
construing a written contract, the primary concern of the court is to ascertain
the true intentions of the parties as expressed in the instrument.  Coker v. Coker, 650 S.W.2d 391,
393 (Tex. 1983); see also Nat’l Union Fire Ins. Co. of Pittsburgh, PA v.
CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995).  To achieve this objective, courts should
examine and consider the entire writing in an effort to harmonize and give
effect to all the provisions of the contract so that none will be rendered
meaningless.  Id.  No single provision taken alone will be given
controlling effect; rather, all the provisions must be considered with
reference to the whole instrument.  Id.;
Myers v. Gulf Coast Minerals Mgmt. Corp., 361 S.W.2d 193, 196
(Tex. 1962).

If
the written instrument is so worded that it can be given a certain or definite
legal meaning or interpretation, then it is not ambiguous, and the court will
construe the contract as a matter of law. 
Coker, 361 S.W.2d at 393.  
An ambiguity may be either “patent” or “latent.”  See CBI, 907 S.W.2d at
520.  A patent ambiguity is evident on
the face of the contract.  Id.  A latent ambiguity arises when a contract
that is unambiguous on its face is applied to the subject matter, and an
ambiguity appears by reason of some collateral matter.  See id.[3]








The
interpretation of an unambiguous contract is a question of law, which we review
de novo.  See MCI Telecomm. Corp.
v. Tex. Util. Elec. Co., 995 S.W.2d 647, 650 (Tex. 1999).  Ambiguity does not arise simply because the
parties advance conflicting interpretations of the contract; rather, for an
ambiguity to exist, both interpretations must be reasonable.  Lopez v. Munoz, Hockema & Reed, L.L.P.,
22 S.W.3d 857, 861 (Tex. 2000).  Yet when
a contract contains an ambiguity, the granting of a motion for summary judgment
is improper because the interpretation of the contract becomes a fact
issue.  See A.W. Wright &
Assoc., P.C. v. Glover, Anderson, Chandler & Uzick, L.L.P., 993
S.W.2d 466, 470 (Tex. App.–Houston [14th Dist.] 1999, pet. denied) (citing Coker,
650 S.W.2d at 394).

In
interpreting a contract, we must presume that the parties thereto intended
every clause to have some effect; therefore, we consider each part of the
document with every other part of the document so that the effect and meaning
of one part on any other part may be determined.  See Birnbaum v. Swepi LP, 48
S.W.3d 254, 257 (Tex. App.–San Antonio 2001, pet. denied).  Moreover, we give terms their plain,
ordinary, and generally accepted meaning unless the instrument shows that  the parties used such terms in a technical or
different sense.  Id.  Finally, we enforce an unambiguous  agreement as written.  Id.  We are not permitted to rewrite an agreement
to mean something it did not.  Id.  We cannot change the contract simply because
we or one of the parties comes to dislike its provisions or thinks that
something else is needed in it.  Id.  Parties to a contract are masters of their
own choices and are entitled to select what terms and provisions to include in
or omit from a contract.  Id.  

The
epicenter of our inquiry concerns the meaning of the term “Operational
Date.”  When contracting parties set
forth their own definitions of the terms they employ, the courts are not at
liberty to disregard these definitions and substitute other meanings.  See Alexander v. Cooper, 843
S.W.2d 644, 646-47 (Tex. App–Corpus Christi 1992, no writ); Fulton v.
Tex. Farm Bureau Ins. Co., 773 S.W.2d 391, 392 (Tex. App.–Dallas 1989,
writ denied); Hart v. Traders & Gen. Ins. Co., 487 S.W.2d
415, 417‑18 (Tex. Civ. App.–Fort Worth 1972, writ ref’d n.r.e.).  In the case at hand, the language employed in
paragraph 2.4 of both the 1994 and 1998 agreements demonstrates that the
parties intended to ascribe a particular meaning to the term “Operational
Date.”  Paragraph 2.4 states as follows:

 

The equipment and related parts, accessories, and
supplies shall be installed at HCS’s sole cost and expense, on or before ninety
(90) days from the date HCS receives an executed counterpart of the Agreement
from Hospital (“Operational Date”) . . . . 

 

 








HCS argues that
Paragraph 2.4 defines “Operational Date” as a date within ninety days from the
date HCS received an executed counterpart of the contract.[4]  Good Shepherd contends that Paragraph 2.4
defines “Operational Date” as the date when the equipment was installed.[5]

Both
parties argue at length as to how the parenthetical containing the term
“Operational Date” refers to a certain portion of the preceding sentence.  Neither party agrees as to which portion of
this multi-clause sentence the parenthetical refers.  We are aware of no rule of construction,
grammar, or punctuation[6]
that will permit us to determine precisely to what portion of the preceding
sentence or other portion of a document a parenthetically-defined term
refers.  As such, from our reading of the
sentence by which the parties intended to define the term “Operational Date,”
we conclude that the term is fairly susceptible of more than one
construction.  Given the language
employed, neither HCS’s interpretation of the contract nor that of Good
Shepherd is any less reasonable.[7]








Therefore,
the term “Operational Agreement,” which the parties intended to have a distinct
meaning apart from its plain meaning, see Cooper, 843 S.W.2d at
646-47, cannot be given a certain or definite legal meaning or interpretation.
We conclude that the term “Operational Date” is ambiguous.  Because the contract contains an ambiguity,
there is an issue of fact concerning its interpretation.  See A.W. Wright & Assoc., P.C., 993
S.W.2d at 470.  Therefore, we hold that
the trial court erred in granting summary declaratory judgment in favor of Good
Shepherd.  See Tex. R. Civ. P. 166a(c).  We further hold that the trial court did not
err in overruling HCS’s motion for summary judgment.  Id.  HCS’s first issue is overruled, and its
second issue is sustained in part.[8]

 

Attorney’s Fees

In
its third issue, HCS argues that the trial court erred in awarding Good
Shepherd $124,490.32 in attorney’s fees. 
Good Shepherd’s claim for attorney’s fees was made in conjunction with
its claim under the Declaratory Judgment Act. 
See Tex. Civ. Prac. &
Rem. Code Ann. § 37.009 (Vernon 1997).  We have held that the trial court erred in
granting summary declaratory judgment in favor of Good Shepherd.  Thus, it follows that its award of attorney’s
fees to Good Shepherd was likewise erroneous. 
HCS’s third issue is sustained.

 

Disposition

Having
sustained a portion of HCS’s second issue as well as its third issue, we reverse
the trial court’s order granting Good Shepherd’s motion for summary declaratory
judgment and award of attorney’s fees. 
Having overruled HCS’s first issue, we affirm the
trial court’s order overruling HCS’s motion for summary judgment on its breach
of contract claim.  We remand
the cause to the trial court for further proceedings consistent with this
opinion.

 

    DIANE DEVASTO   

     Justice

 

Opinion delivered November 16,
2005.

Panel
consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

 

 

 

 

 

 

                                                                     (PUBLISH)











[1] Further, if neither party notified the other of its
intent to discontinue the agreement at least ninety days prior to the
expiration of the agreement, the agreement would automatically renew for a one
year term.





[2] At the time of its motion for summary judgment, Good
Shepherd’s third amended petition sought a declaration that the operational
date was no later than October 31, 1994.





[3]
For example, if a contract called for goods to
be delivered to “the green house on Pecan Street,” and there were, in fact, two
green houses on Pecan Street, a latent ambiguity would arise.  See id. n.4.





[4] Thus, HCS contends that the 1998 agreement created a
new operational date when it was executed by Good Shepherd and received by HCS.





[5] Specifically, Good Shepherd contends that the
operational date was the same for both the 1994 and the 1998 agreements.





[6] See Gen. Fin. Servs. v. Practice Place, 897 S.W.2d 516, 522 (Tex. App.–Fort Worth 1995, no
writ) (citing Jim Walter Homes, Inc. v. Schuenemann, 668 S.W.2d
324, 330 (Tex. 1984)) (“A cardinal rule of contract construction is that courts
are required to construe contracts in a manner that would give effect to the
parties’ intentions as revealed by the language used in the contract.”); Mattison,
Inc. v. W.F. Larson, Inc., 529 S.W.2d 271, 273 (Tex. Civ. App.–Amarillo
1975, writ ref’d n.r.e.) (“The words, not the punctuation, are the controlling
guide in construing a contract. If the meaning of the words is clear the court
will interpret a contract . . . without regard to the punctuation marks or the
want of them.  While punctuation may be
resorted to in order to resolve an ambiguity which it has not created,
punctuation or the absence of punctuation will not of itself create
ambiguity.”).





[7] As Good Shepherd argues in response to a portion of
HCS’s second issue, extrinsic evidence is admissible to give the words of a
contract a meaning consistent with that to which they are reasonably
susceptible, i.e., to interpret contractual terms.  See CBI, 907 S.W.2d at
521.  However, a court may consider the
parties’ interpretations of the contract through extrinsic or parol evidence
only after a contract is first determined to be ambiguous.  See  Friendswood Dev. Co. v. McDade + Co., 926
S.W.2d 280, 283 (Tex. 1996); Atl. Lloyds Ins. Co. v. Butler, 137
S.W.3d 199, 210 (Tex. App.–Houston [1st Dist.] 2004, pet. denied).  Thus, we have not considered the extrinsic
evidence offered by Good Shepherd in support of its motion for summary judgment
in our consideration of whether the term “Operational Agreement,” as defined by
the parties, is ambiguous.





[8] Having held that the trial court erred in granting
Good Shepherd’s motion for summary declaratory judgment, we need not consider
the portion of HCS’s second issue concerning whether the trial court erred in
admitting extrinsic evidence offered by Good Shepherd.  See n. 6.