NO. 12-03-00308-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
CONSOLIDATED PETROLEUM                    §                 APPEAL FROM THE 392ND
PARTNERS, I, LLC,
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF


FRANK TINDLE,
APPELLEE                                                        §                 HENDERSON COUNTY, TEXAS
                                                                                                                                                            
OPINION
            Consolidated Petroleum Partners I, L.L.C. appeals the trial court’s partial summary judgment
entered in favor of Frank Tindle.


 Consolidated raises four issues on appeal. We affirm.
 
BackgroundOn June 15, 2001, Tindle and Consolidated entered into a written agreement governing the
acquisition and disposition of certain oil, gas, and mineral leases in the Weesatche Area (“WA”) of
Goliad County. Paragraph 5 of the agreement set forth that Tindle would fund a portion of the
estimated WA leasehold acquisition costs as follows:
 
              5.           Participant agrees to provide funding in the amount of $200,000 contemporaneously
with execution and delivery of this Agreement. The amount funded and the
considerations provided above are in contemplation of funding a portion of the
$494,187.29 amount shown on Exhibit A. ($200,000 Divided by $494,187.29
equals Participant’s .404704% of 8/8ths ownership in WA)[.] Participant and CPP
agree that the Amount shown on Exhibit A is an estimate based on negotiated terms
and is subject to modifications, however[,] participant in no way is obligated to fund
in excess of the $200,000 amount unless mutually agreed upon.


The parties further agreed that Tindle would be entitled to the following compensation:
              ....
 
              1b.         Reimbursement of lease acquisition costs (based on Participant’s factor of
.404704% of 8/8ths) funded by Participant attributable to each lease;

              ....
 
              1d.         The overriding royalty interest . . . will be delivered to Participant as soon as
reasonably practical after lease acquisition. With respect to the cash consideration
provided in [Paragraph 1b above], such amounts (determined on a lease by lease
basis) will be paid to Participant upon the earlier to occur of (i) disposition of such
lease or (ii) inclusion of such lease within a drilling unit by CPP. For these
purposes, disposition of a lease means a sale of a lease to a third party.


Consolidated entered into similar agreements with other participants, who contributed various
percentages of the total leasehold acquisition cost.



            Consolidated acquired multiple leases in the WA, but, following the drilling of a dry hole,
sold all of the leases to a third party for $275,000.00. Subsequently, Consolidated distributed a
portion of the sales proceeds to Tindle in the amount of $86,689.40.
            Tindle filed the instant suit claiming Consolidated breached its contract with him by not
repaying him the $200,000.00 he contributed toward the leasehold acquisition costs. Tindle
subsequently moved for partial summary judgment on his breach of contract claim. Consolidated
responded to Tindle’s motion, contending not only that Tindle’s interpretation of the contract was
flawed, but also that the total leasehold acquisition costs were greater than the estimated $494,187.29
figure upon which Tindle’s participation factor was based and were, in fact, $613,544.27.
            On March 19, 2003, the trial court conducted a hearing on Tindle’s motion for partial
summary judgment. On March 21, 2003, the trial court granted Tindle’s motion, ordering that he
be awarded the difference between his $200,000.00 funding contribution and the $86,689.40 already
paid to him by Consolidated. The court reserved issues pertaining to attorney’s fees and the value
of the overriding royalty interest for trial.



            Tindle later nonsuited his claims related to the respective values of the mineral acreage fee
and the overriding royalty interest. On August 4, 2003, a trial was conducted on attorney’s fees. The
trial court signed its final judgment on August 5, 2003, in which it awarded Tindle breach of contract
damages of $113,311.00, attorney’s fees for both trial and appeal, and both prejudgment and post-judgment interest. Consolidated filed a motion for new trial, which the trial court denied. This
appeal followed.
 
Standard of Review
            In reviewing a traditional motion for summary judgment, this court must apply the standards
established in Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985), which
are as follows:
 
              1.           The movant for summary judgment has the burden of showing that there is no
genuine issue of material fact and that it is entitled to judgment as a matter of law;
              2.           In deciding whether there is a disputed material fact issue precluding summary
judgment, evidence favorable to the non-movant will be taken as true;
              3.           Every reasonable inference must be indulged in favor of the non-movant and any
doubts resolved in its favor.


See id.; May v. Nacogdoches Mem’l Hosp., 61 S.W.3d 623, 628 (Tex. App.–Tyler 2001, no pet.). 
For a party to prevail on a motion for summary judgment, he must conclusively establish the absence
of any genuine question of material fact and that he is entitled to judgment as a matter of law. Tex.
R. Civ. P. 166a(c). A movant must either negate at least one essential element of the nonmovant's
cause of action or prove all essential elements of an affirmative defense. See Randall's Food
Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995); see also MMP, Ltd. v. Jones, 710
S.W.2d 59, 60 (Tex. 1986). Since the burden of proof is on the movant, and all doubts about the
existence of a genuine issue of a material fact are resolved against the movant, we must view the
evidence and its reasonable inferences in the light most favorable to the nonmovant. See Great Am. 
Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965). We are
not required to ascertain the credibility of affiants or to determine the weight of evidence in the
affidavits, depositions, exhibits, and other summary judgment proof. See Gulbenkian v. Penn, 252
S.W.2d 929, 932 (Tex. 1952). The only question is whether or not an issue of material fact is
presented. See Tex. R. Civ. P. 166a(c).
            Once the movant has established a right to summary judgment, the nonmovant has the burden
to respond to the motion for summary judgment and present to the trial court any issues that would
preclude summary judgment. See, e.g., City of Houston v. Clear Creek Basin Authority, 589
S.W.2d 671, 678-79 (Tex. 1979). All theories in support of or in opposition to a motion for
summary judgment must be presented in writing to the trial court. See Tex. R. Civ. P. 166a(c).
 
Contractual Interpretation
            In its first and second issues, and in portions of its third and fourth issues, Consolidated
argues that the trial court erred in granting Tindle’s motion for partial summary judgment because
it improperly interpreted the contract between the parties and, as a result, improperly awarded
damages to Tindle. Specifically, Consolidated argues that the agreement did not obligate it to repay
Tindle the entirety of his funding contribution toward the lease acquisition costs if the leases were
sold for a loss, but rather, Tindle was only entitled to be reimbursed the percentage of his
participation factor based on sales proceeds from the leases as each was sold. Consolidated also
argues that a material fact issue existed as to the leasehold acquisition costs and, therefore, as to the
percentage comprising Tindle’s participation factor.
            In construing a written contract, the primary concern of the court is to ascertain the true
intentions of the parties as expressed in the instrument. Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983); see also Nat’l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Industries, Inc., 907 S.W.2d
517, 520 (Tex. 1995). To achieve this objective, courts should examine and consider the entire
writing in an effort to harmonize and give effect to all the provisions of the contract so that none will
be rendered meaningless. Id. No single provision taken alone will be given controlling effect;
rather, all the provisions must be considered with reference to the whole instrument. Id.; Myers v.
Gulf Coast Minerals Mgmt. Corp., 361 S.W.2d 193, 196 (Tex. 1962).
            If the written instrument is so worded that it can be given a certain or definite legal meaning
or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law. 
 Coker, 361 S.W.2d at 393. However, when a contract’s meaning is uncertain and doubtful or is
reasonably susceptible to more than one meaning, it is ambiguous, and summary judgment is
improper. See id.; Calhoun v. Killian, 888 S.W.2d 51, 54 (Tex. App.–Tyler 1994, writ denied) (if
a written document is ambiguous, it cannot support a summary judgment because its meaning raises
a fact issue, even if the parties fail to plead ambiguity). An ambiguity may be either “patent” or
“latent.” See CBI, 907 S.W.2d at 520. A patent ambiguity is evident on the face of the contract. 
Id. A latent ambiguity arises when a contract that is unambiguous on its face is applied to the subject
matter, and an ambiguity appears by reason of some collateral matter. See id.



            The interpretation of an unambiguous contract is a question of law, which we review de
novo. See MCI Telecommunications Corp. v. Texas Utilities Elec. Co., 995 S.W.2d 647, 650 (Tex.
1999). Ambiguity does not arise simply because the parties advance conflicting interpretations of
the contract; rather, for an ambiguity to exist, both interpretations must be reasonable. Lopez v.
Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 861 (Tex. 2000).
            In interpreting a contract, we must presume that the parties thereto intended every clause to
have some effect; therefore, we consider each part of the document with every other part of the
document so that the effect and meaning of one part on any other part may be determined. See
Birnbaum v. Swepi LP, 48 S.W.3d 254, 257 (Tex. App.–San Antonio 2001, pet. denied). Moreover,
we give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that 
the parties used such terms in a technical or different sense. Id. Finally, we enforce an unambiguous 
agreement as written. Id. We are not permitted to rewrite an agreement to mean something it did
not. Id. We cannot change the contract simply because we or one of the parties comes to dislike its
provisions or thinks that something else is needed in it. Id. Parties to a contract are masters of their
own choices and are entitled to select what terms and provisions to include in or omit from a
contract. Id. Here, while neither party argues that the agreement is ambiguous, each interprets its
language differently, and neither concedes that its interpretation of the relevant passages is any less
reasonable than the other party’s interpretation of the same. At the heart of the issue is Tindle’s
participation factor and its function as outlined by the terms of the agreement. 
            Tindle’s “participation factor” is explained in paragraph 5 of the agreement. The
participation factor is a percentage determined by dividing Tindle’s funding contribution, $200,000,
by the total leasehold acquisition costs, which were estimated in the agreement, but had yet to be
finally determined at its signing.
            The compensation at issue relates to the amount of “reimbursement” due Tindle of the
leasehold acquisition costs. According to paragraph 1b, this compensation is based on Tindle’s
participation factor. The agreement further states that such compensation will be determined on a
lease by lease basis and paid to Tindle upon the sale of the lease to a third party. It is undisputed that
all leases at issue were sold to a third party.
            Consolidated argues that the intent of the parties, as evidenced by the language of the
agreement, was that, upon the sale of each lease, Tindle would be reimbursed a portion of the sales
proceeds based on his participation factor. Tindle argues that the agreement’s language evidences
the parties’ intent that Tindle be reimbursed the portion of the lease acquisition costs he funded
attributable to each lease at the time that lease was sold to a third party. Having read the agreement,
we agree with the parties that the agreement is not ambiguous. However, we are unable to conclude
that Consolidated’s interpretation of the contract language is reasonable.
            The agreement never references “sales proceeds.” While paragraph 1d of the agreement
states that the compensation due Tindle is to be paid upon the sale of the lease to a third party and
determined on a lease by lease basis, such language does not serve to alter the manner of calculating
the amount of reimbursement owed Tindle for his contribution to the total lease acquisition costs
as outlined in paragraph 1b. The language used in paragraph 1d, given its plain meaning, does not
contradict the language used in paragraph 1b.
            Paragraph 1b plainly states that Tindle will receive reimbursement of the lease acquisition
costs he funded, which, as paragraph 5 states, is determined by multiplying the total lease acquisition
costs by Tindle’s participation factor. To “reimburse” means “to pay back or compensate (a person)
for money spent, or losses or damages incurred.” The American Heritage Dictionary 1042 (2nd
Col. Ed. 1982). Thus, Consolidated was obligated to repay Tindle the portion of the lease
acquisition costs he funded.
            Paragraph 1d sets forth when the compensation in paragraph 1b will become due and owing. 
It states that such compensation will be paid on a lease by lease basis when the leases are sold to a
third party. Since multiple leases are contemplated earlier in the agreement, it is reasonable that the
total compensation from paragraph 1b would not be due upon the sale of the first lease if the
remaining leases had yet to be sold. Rather, as the agreement states, such compensation would be
paid on a “lease by lease basis.” As Consolidated notes in its brief, were the leases not sold to a third
party, Tindle would not be entitled to payment.
            We next consider whether the trial court properly awarded Tindle $113,311.00. Consolidated
argues that a material fact issue existed as to the lease acquisition costs and, thus, as to the
percentage comprising Tindle’s participation factor as well. However, the amount Tindle funded,
$200,000.00, is a constant. Thus, no matter what the total lease acquisition costs were, when the
amount of lease acquisition costs is multiplied by the percentage determined from dividing $200,000
by the lease acquisition costs, the product will always be $200,000.00.


 Therefore, while there may
exist a fact issue as to the amount of the total lease acquisition costs, that fact issue is not material
as it has no bearing on the amount of money to which Tindle was entitled as reimbursement pursuant
to the agreement. 
            The record in the case at hand reflects that upon the sale of all the subject leases,
Consolidated paid Tindle $86,689.40. The contract indicates that upon the sale of the leases,
Consolidated was to pay Tindle the portion of the lease acquisition costs he funded, $200,000.00. 
Thus, since there was a breach of the agreement by Consolidated, the trial court’s award of
$113,311.00 allowed Tindle to receive the benefit of the bargain.


 See, e.g., Prudential Securities,
Inc. v. Haugland, 973 S.W.2d 394, 396 (Tex. App.–El Paso 1998, pet. denied) (elements of breach
of contract); Hart v. Moore, 952 S.W.2d 90, 97 (Tex. App.–Amarillo 1997, writ denied) (expectancy
damages, similar to benefit of the bargain recoveries, award damages for the reasonably expected
value of the contract). Therefore, we hold that there did not exist a material issue of fact, and the
trial court properly granted summary judgment in Tindle’s favor. Consolidated’s first and second
issues are overruled. Consolidated’s third and fourth issues are overruled in part.
 
Attorneys’ Fees
            In parts of his third and fourth issues, Consolidated states that the trial court erred in
awarding attorney’s fees to Tindle. Consolidated has raised no argument in support of this
contention and has, therefore, waived such an argument on appeal. See Tex. R. App. P. 38.1(h). The
remainder of Consolidated’s third and fourth issues are overruled.
 
Disposition
            Having overruled Consolidated’s issues one, two, three, and four, we affirm the trial court’s
judgment.
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
 
Opinion delivered March 9, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.


(PUBLISH)