12-08-00089-CV









NO. 12-08-00089-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

THEDFORD CROSSING, L.P.,                              §          APPEAL
FROM THE 114TH

APPELLANT

 

V.                                                                                

 

TYLER ROSE NURSERY, INC.,                            §         JUDICIAL
DISTRICT COURT OF

JOE D. TEW, JOHN A. WILLIAMS, III,

AND WH GROUP, INC. D/B/A

EAST TEXAS REALTY,

APPELLEES                                                             §          SMITH
COUNTY, TEXAS







OPINION

            Tyler
Rose Nursery, Inc., Joe D. Tew, John A. Williams, III, and WH Group, Inc. d/b/a
East Texas Realty have filed a motion for rehearing, which is denied.  We
withdraw our opinion of December 16, 2009 and substitute the following opinion
in its place.

            Thedford
Crossing, L.P. appeals the trial court’s take nothing judgment entered in favor
of Appellees, Tyler Rose Nursery, Inc., Joe D. Tew, John A. Williams, III, and
WH Group, Inc. d/b/a East Texas Realty.  Thedford raises four issues on
appeal.  We reverse and remand.

 

Background

            In
2003, Joe D. Tew and his company, Tyler Rose Nursery, Inc. (collectively “Tew”)
contracted with representatives of the T.M. Morriss Family Limited Partnership,[1]
whereby Tew agreed to sell and Thedford agreed to buy approximately 361 acres
of undeveloped commercial property located near the intersection of Interstate
20 and Highway 69.  The contract provided for a cash sale of the property for
$6,000,000.  Thedford subsequently paid a $50,000 fee to extend the closing
date of the contract by one year.

            In
August 2005, during the period of the extension, the parties entered into an amended
contract, which stated, in pertinent part, as follows:

 

            H.  Other Modifications:

This option contract shall close on/or before November
15, 2005 or terminate with no further options or extensions.  Seller and
Purchaser have agreed to close one of two ways:

 

1.  Payment of the original purchase price of
$6,000,000 or

 

2.  Purchaser, by notifying Seller by November 1, 2005,
shall pay Seller $2,000,000 with mutual agreement to the following terms and conditions:

 

a.  The total purchase price shall be raised to
$10,000,000.

 

b.  Seller shall release 50 contiguous acres to
purchaser, such land to be mutually agreed upon.

                

                                c.  Further releases
to purchaser shall be at the rate of $1.00 per sq. ft. and shall                                                  be
in 10 acre minimums.

 

d.  The final closing date shall be extended to November
15, 2009 with any remaining balance due and payable by that date.

 

 

Thedford elected
to proceed under the seller financed option set forth in paragraph (H)(2) and
deposited the $2,000,000 into escrow.  Thereafter, the parties sought to
negotiate the location of the fifty contiguous acres to be released pursuant to
paragraph (H)(2)(b) of the contract.  

            However,
as the date for closing approached, the parties had not reached an agreement
concerning the location of the fifty acre tract.  At closing,[2]
Tew set forth that he would agree to the fifty acre tract Thedford proposed and
proceed with the transaction if Thedford would agree to certain restrictions on
future partial releases.  Ultimately, the parties could not agree on the
location of the fifty acre tract, and the sale was not closed.

            Thedford
filed the instant suit on November 18, 2005 alleging, among other causes of
action, breach of contract and fraud.  The matter proceeded to a jury trial.  At
the conclusion of Thedford’s presentation of evidence, the trial court entered
a directed verdict on Thedford’s fraud claim.  Subsequently, prior to the
submission of the case to the jury, the trial court, over Thedford’s objection,
conditioned the submission of Question 2 of the court’s charge on the jury’s
affirmative response to Question 1.  These questions in the court’s charge inquire
of the jury as follows:

 

QUESTION NO. 1:

                

                Did THEDFORD CROSSING, L.P. and TYLER
ROSE NURSERY, INC. and JOE D. TEW enter into a contractual agreement on the
location and configuration of a tract of 50 acres to be released to THEDFORD
CROSSING, L.P. at the closing for the sale and purchase of the 361.917 acres of
land located in Smith, County, Texas?

 

                ANSWER “YES” OR “NO”

 

                ANSWER:             ______________

 

IF YOU HAVE ANSWERED QUESTION NO. 1 “YES” THEN ANSWER
QUESTION NO. 2.  OTHERWISE DO NOT ANSWER QUESTION NO. 2[.]

 

QUESTION NO. 2:

 

                Did TYLER ROSE NURSERY, INC. and JOE
D. TEW fail to comply with a material obligation of their agreement with
THEDFORD CROSSING, L.P. to sell and convey to THEDFORD CROSSING, L.P. the
361.917 [acre] tract of land located at I-20 and Jim Hogg Road in Smith County,
Texas at the closing on November 15, 2005?

 

ANSWER YES OR NO

 

ANSWER:  __________

 

The jury
answered “No” in response to Question 1 and, pursuant to the trial court’s
instruction, did not answer Question 2.  Accordingly, the trial court entered a
take nothing judgment against Thedford, and this appeal followed.[3]

 

Charge Error - Improperly Conditioned Question

            In
its first issue, Thedford argues that by conditioning Question 2 on the jury’s
affirmative answer to Question 1, the trial court erroneously charged the jury
under a legally incorrect interpretation of the parties’ contract. 
Specifically, Thedford contends that the parties’ agreement concerning the
location of the fifty acre tract was not a condition precedent to closing the
sale of the property.

Standard
of Review

            If
an erroneous conditional submission deprives a party of the submission of an
issue raised by the pleadings and evidence, it constitutes reversible error.  See
Varme v. Gordon, 881 S.W.2d 877, 881 (Tex. App.–Houston [14th Dist.]
1994, writ denied).  Complaints regarding the trial court’s charge are reviewed
under an abuse of discretion standard. Tex. Dep’t of Human
Servs. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990).  An abuse of
discretion occurs when the trial court acts without reference to any guiding
principles.  Id.  An error in the charge is
reversible only if harmful, that is, if it was reasonably calculated to cause
and probably did cause the rendition of an improper judgment.  Akin v. Santa Clara Land Co., 34 S.W.3d 334, 345 (Tex. App.–San Antonio 2000, pet.
denied).  To determine whether an alleged error is harmful, we consider the
pleadings, the evidence presented at trial, and the charge in its entirety.  Island
Recreational Dev. Corp. v. Republic of Tex. Sav. Ass’n, 710 S.W.2d 551,
555 (Tex. 1986).  

Contractual
Construction and Conditions Precedent 

In
construing a written contract, the primary concern of the court is to ascertain
the true intentions of the parties as expressed in the instrument.  Coker
v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); see also Nat=l Union Fire Ins. Co. of
Pittsburgh, PA v. CBI Industries, Inc., 907 S.W.2d 517, 520 (Tex.
1995).  To achieve this objective, courts should examine and consider the
entire writing in an effort to harmonize and give effect to all the provisions
of the contract so that none will be rendered meaningless.  Id. 
No single provision taken alone will be given controlling effect; rather, all
the provisions must be considered with reference to the whole instrument.  Id.; Myers v. Gulf Coast Minerals Mgmt. Corp., 361 S.W.2d 193,
196 (Tex. 1962).

If
the written instrument is so worded that it can be given a certain or definite
legal meaning or interpretation, then it is not ambiguous, and the court will
construe the contract as a matter of law.  Coker, 361 S.W.2d at
393.  The interpretation of an unambiguous contract is a question of law, which
we review de novo.  See MCI Telecommunications Corp. v. Tex. Utils. Elec.
Co., 995 S.W.2d 647, 650 (Tex. 1999).  Ambiguity does not arise simply
because the parties advance conflicting interpretations of the contract;
rather, for an ambiguity to exist, both interpretations must be reasonable.  Lopez
v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 861 (Tex. 2000).

In
interpreting a contract, we must presume that the parties thereto intended
every clause to have some effect; therefore, we consider each part of the
document with every other part of the document so that the effect and meaning
of one part on any other part may be determined.  See Birnbaum v. SWEPI LP,
48 S.W.3d 254, 257 (Tex. App.–San Antonio 2001, pet. denied).  Moreover, we
give terms their plain, ordinary, and generally accepted meaning unless the
instrument shows that the parties used such terms in a technical or different
sense.  Id.  Finally, we enforce an unambiguous agreement as
written.  Id.  We are not permitted to rewrite an agreement to
mean something it did not.  Id.  We cannot change the contract
simply because we or one of the parties comes to dislike its provisions or
thinks that something else is needed in it.  Id.  Parties to a
contract are masters of their own choices and are entitled to select what terms
and provisions to include in or omit from a contract.  Id.

Here,
while neither party argues that the contract is ambiguous, each interprets its
language differently, and neither concedes that its interpretation of the
relevant passage is any less reasonable than the other party=s interpretation of the
same.  The epicenter of our inquiry is whether the parties’ agreement concerning
the location of the fifty acre tract was a condition precedent to Tew’s
obligation to close the sale.  If the agreement was a condition precedent to Tew’s
obligation to close, then it follows that Question 2 was properly conditioned
on the jury’s affirmative answer to Question 1.

To
iterate, the contract stated, in pertinent part, as follows:

 

This option contract shall close on/or before November
15, 2005 or terminate with no further options or extensions.  Seller and
Purchaser have agreed to close one of two ways:

 

1.  Payment of the original purchase price of
$6,000,000 or

 

2.  Purchaser, by notifying Seller by November 1, 2005,
shall pay Seller $2,000,000 with mutual agreement to the following terms and
conditions:

 

a.  The total purchase price shall be raised to
$10,000,000.

 

b.  Seller shall release 50 contiguous acres to
purchaser, such land to be mutually agreed upon.

                

c.  Further releases to purchaser shall be at the rate
of $1.00 per sq. ft. and shall be in 10 acre minimums.

 

d.  The final closing date shall be extended to
November 15, 2009 with any remaining balance due and payable by that date.

 

            Certainty
of Essential Contract Terms and Agreement to Agree in the Future

            Tew
argues that the trial court’s conditional submission of the aforementioned
questions in its charge is immaterial because paragraph (H)(2)(b) of the
contract is an unenforceable agreement to agree, thus rendering the amended
contract nugatory.  Tew further argues that the contract omitted material terms
rendering it indefinite and uncertain as to the parties’ obligations.  

            A
contract must be sufficiently definite in its terms so that a court can understand
what the promissor undertook.  T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992).  If an alleged agreement is so
indefinite as to make it impossible for a court to fix the legal obligations
and liabilities of the parties, it cannot constitute an enforceable contract.  Engelman
Irrigation Dist. v. Shields Bros., 960 S.W.2d 343, 352 (Tex. App.–Corpus
Christi 1997), pet. denied per curiam, 989 S.W.2d 360 (Tex. 1998).  In
order for a court to enforce a contract, the parties must agree to the material
terms of the contract.  T.O. Stanley Boot, 847 S.W.2d at 221. 

            Similarly,
a contract providing for an agreement to be negotiated in the future is void.  See Ski River Dev., Inc. v. McCalla, 167 S.W.3d 121, 133–34 (Tex. App.–Waco 2005, pet. denied).  The parties, however, may agree on some terms
sufficient to create a contract, leaving other provisions for later negotiation
so long as those terms are not material or essential.  Id. at
134.  However, those terms left for future negotiation are not part of the
enforceable portion of the contract.  See Killion v. Lanehart,
154 S.W.3d 183, 189 (Tex. App.–Amarillo 2004, pet. denied).

            Here,
the essence of the parties’ agreement is the sale of real estate.  The parties
agreed that Tew would sell and Thedford would buy approximately 361 acres of
land.  The contract identified the location of the 361 acres to be conveyed, set
forth the price Thedford would pay Tew, and stated the date on which the sale
must close.  Based on our reading of the contract, there is no uncertainty
concerning these terms, and, thus, there exists a valid contract for the sale
of 361 acres of real estate.  

            The
uncertainties Tew asserts in his brief do not serve to derail the greater purpose
embodied in the parties’ agreement––the sale of real estate.  From our review
of the contract as a whole, we conclude that the terms concerning the location
of land to be released to Thedford free of lien, though undoubtedly of concern
to the parties, is not an essential term to the contract for sale of real
estate.  Thus, the parties’ expression of this term as one to be agreed upon in
the future does not serve to nullify the contract as a whole.

            Likewise,
the manner of release and extent of Tew’s conveyance of the property between
the closing of the option and the final closing date is not an essential term
to the contract for sale of real estate.  Thus, the parties’ failure to specify
such details is not fatal to their contract.   Further still, the terms and
provisions applicable to the payment of the balance of the purchase price are
not essential terms to the overall sale of the property.  Cf. Penwell v.
Barrett, 724 S.W.2d 902, 905 (Tex. App.–San Antonio 1987, no writ)
(Texas law does not require specific dollar figure be agreed to for contract to
be enforceable; when agreement provides standard to be applied in determining
price, contract is sufficiently definite to be enforceable).  Thus, we conclude
that while each of these details may be important to the parties and may have
proven to be valuable additions to their agreement given the benefit of
hindsight, the absence of such terms does not serve to render unenforceable the
contract for sale.  

            Existence
of a Condition Precedent    

            Conditions
precedent to an obligation to perform under a contract are those acts or events
occurring subsequent to the making of a contract that must occur before there
is a right to immediate performance and before there is a breach of a contractual
duty.  See Beacon Nat=l
Ins. Co. v. Glaze, 114 S.W.3d 1, 2 (Tex. App.–Tyler 2003,
pet. denied) (citing Hohenberg Bros. Co. v. George E. Gibbons &
Co., 537 S.W.2d 1, 3 (Tex.1976)).  In order to determine whether a
condition precedent exists, the intention of the parties must be ascertained by
looking to the contract as a whole.  See Criswell v. European Crossroads
Shopping Ctr., Ltd., 792 S.W.2d 945, 948 (Tex. 1990).  In construing a
contract, forfeiture by finding a condition precedent is to be avoided when
another reasonable reading of the contract is possible, when the intent of the
parties is doubtful, or when a condition would impose an impossible or absurd
result. Criswell, 792 S.W.2d at 948.

            Thedford
argues that the contract contains no language that would indicate the existence
of a condition precedent.  We agree that the contract contains no such
language.  However, while certain terms such as “if,” “ provided that,” “on
condition that,” or some other phrase ordinarily connote the parties’ intent
that there be a condition precedent, no particular words are necessary for the
existence of such a condition.  See Hohenberg Bros. Co., 537
S.W.2d at 3.  

            We
have reviewed the contract in its entirety.  We are mindful that conditions
precedent are acts or events occurring subsequent to the making of a contract that
must occur before there is a right to immediate performance.  See Glaze, 114
S.W.3d at 2.  Here, the contract sets forth that the parties agreed to close by
one of two methods.  There is no dispute on appeal that the method by which the
parties agreed to close is embodied by paragraph (H)(2).  From our reading of
paragraph (H)(2) in light of the contract as a whole, it is apparent that the
contract required the parties to mutually agree that, among other things, Tew
would release fifty contiguous acres, the location of which would be agreed
upon, to Thedford.  However, the contract does not set forth any date by which
the release of such property or the determination of its location must occur. 
Rather, the contract required only that the parties agree that (1) Tew
will release the land and (2) the parties would mutually agree upon the
location of the land.  

            Tew
contends that treating the provision as a covenant would lead to an absurd
result.  We disagree.  Tew’s argument rests upon his assertion that the parties
imposed upon themselves a deadline of the closing date to agree upon the
location of the fifty acre tract.  However, as set forth above, a close reading
of the contract reveals that no such deadline was expressed in the agreement. 
There is no indication from the plain language of the contract that the parties
intended to compel the release of the fifty acre tract at the time of closing. 


            Therefore,
based on the plain meaning of the language of the contract, we hold that the
parties’ mutual agreement concerning the location of the fifty contiguous acres
to be released by Tew was a covenant rather than a condition.  Thus, it follows
that the trial court abused its discretion when it conditioned the jury’s
consideration of Question 2 on its affirmative response to Question 1. 
Thedford’s first issue is sustained.

Harm
Analysis

            Having
sustained Thedford’s first issue, we must determine if the error was harmful. 
As set forth above, an erroneous conditional submission constitutes reversible
error if it deprives a party of the submission of an issue raised by the
pleadings and evidence.  See Varme v. Gordon, 881 S.W.2d 877, 881
(Tex. App.–Houston [14th Dist.] 1994, writ denied).  By conditioning the jury’s
consideration of Question 2 on its affirmative response to Question 1, the
trial court deprived Thedford the submission of Question 2.  Thus, if the
pleadings and evidence support the submission of Question 2, the trial court’s
erroneous conditional submission was harmful.  Id.; see also
Tex. R. App. P. 44.1(a)(1).

            As
set forth previously, Question 2 stated as follows:

 

Did TYLER ROSE NURSERY, INC. and JOE D. TEW fail to
comply with a material obligation of their agreement with THEDFORD CROSSING,
L.P. to sell and convey to THEDFORD CROSSING, L.P. the 361.917 [acre] tract of
land located at I-20 and Jim Hogg Road in Smith County, Texas at the closing on
November 15, 2005?

 

ANSWER YES OR NO

 

 

            In
the instant case, Thedford alleged in his third amended petition that Tew breached
the parties’ contract by, among other things, (1) failing and refusing to close
the sale transaction at the closing on November 15, 2005 and (2) imposing
additional terms not required by the contract or the addendum thereto with
regard to future releases of property as a condition to closing the sale.  There
is evidence of record supporting that, on the date of closing, Tew did not
convey the 361.917 acre tract of land in question to Thedford.  Rather, the
record reflects that Tew sought to induce Thedford to sign closing documents that
included terms not embodied by the parties’ contract.  Thus, based on our
review of the record, we conclude that the pleadings and evidence supported the
submission of Question 2 to the jury.  As such, we hold that the trial court’s
erroneous conditioning of Question 2 on an affirmative response to Question 1
caused Thedford harm.[4]

 

Directed Verdict––Fraud

            In
its fourth issue, Thedford contends that the trial court erred in granting a
directed a verdict on its fraud claim.  

Standard
of Review

            In reviewing
the grant of a directed verdict, an appellate court follows the standards for
assessing the legal sufficiency of the evidence.  City of Keller v.
Wilson, 168 S.W.3d 802, 809–28 (Tex. 2005); see also Exxon
Mobil Corp. v. Kinder Morgan Operating L.P. “A,” 192 S.W.3d 120, 126
(Tex. App.–Houston [14th Dist.] 2006, no pet.).  When reviewing a directed
verdict, an appellate court must credit the favorable evidence if reasonable
jurors could and disregard the contrary evidence unless reasonable jurors could
not.  City of Keller, 168 S.W.3d at 827; see also Cotten
v. Weatherford Bancshares, Inc., 187 S.W.3d 687, 696 (Tex. App.–Fort
Worth 2006, pet. denied).  An appellate court must determine whether there is
any evidence of probative force to raise a fact issue on the question
presented.  See, e.g., Bostrom Seating, Inc. v. Crane Carrier Co.,
140 S.W.3d 681, 684 (Tex. 2004); Szczepanik v. First S. Trust Co.,
883 S.W.2d 648, 649 (Tex. 1994); Sibai v. Wal-Mart Stores, Inc.,
986 S.W.2d 702, 705 (Tex. App.–Dallas 1999, no pet.); Edlund v. Bounds,
842 S.W.2d 719, 723 (Tex. App.–Dallas 1992, writ denied).

            A
directed verdict is warranted when the evidence is such that no other verdict
can be rendered and the moving party is entitled, as a matter of law, to a
judgment.  See Edlund, 842 S.W.2d at 724.  A trial court may
order a directed verdict in favor of a defendant when (1) a plaintiff fails to
present evidence raising a fact issue essential to the plaintiff’s right of
recovery or (2) the plaintiff admits or the evidence conclusively establishes a
defense to the plaintiff’s cause of action.  See Prudential Ins.
Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000).  A trial court may properly direct a verdict if no evidence of probative force
raises a fact issue on the material questions in the lawsuit.  See
Prudential Ins., 29 S.W.3d at 77; Sibai, 986 S.W.2d at
705.  Moreover, the reviewing court may affirm a directed verdict even if the
trial court’s rationale for granting the directed verdict is erroneous,
provided the directed verdict can be supported on another basis.  See Exxon
Corp. v. Breezevale Ltd., 82 S.W.3d 429, 443 (Tex. App.–Dallas 2002,
pet. denied).

            However,
it is error for a trial court to direct a verdict when a material issue is raised
by the evidence.  See Edlund, 842 S.W.2d at 724.  If there is any
conflicting evidence of probative value on any theory of recovery, a directed
verdict is improper and the case must be remanded for the jury to determine
that issue.  See Szczepanik, 883 S.W.2d at 649; Sibai,
986 S.W.2d at 705; Monroe v. Grider, 884 S.W.2d 811, 815–16 (Tex.
App.–Dallas 1994, writ denied).  If reasonable minds could differ as to the
controlling facts, a trial court errs if it grants a directed verdict and
refuses to submit the issues to the jury.  See Latham v. Castillo,
972 S.W.2d 66, 68 (Tex. 1998); Edlund, 842 S.W.2d at 724.

Governing
Law         

            In
order to determine the precise nature of Thedford’s fraud claim, we must
consider the factual allegations in Thedford’s third amended petition.  See Murray
v. O&A Express, Inc., 630 S.W.2d 633, 636 (Tex. 1982) (plaintiff=s petition defines issues
in lawsuit).  In its petition Thedford alleges, in pertinent part, as follows:

                [The Defendant’s] actions described
above constitute fraud with respect to the sale of the Property under Section
27.01 of the Texas Business & Commerce Code.

 

….

 

                [On] several occasions prior to the
signing of the Addendum in August 2005, Defendants Tyler Rose Nursery and Joe
Tew made false promises and representations to Plaintiff.  Those promises
included:  (1) Defendants would close the sale transaction on or before
November 15, 2005; (2) Defendants would adjust the final sales price in the
amount of Sixteen Thousand dollars ($16,000.00) per acre as surveyed; (3)
Defendants would pay [for] the title insurance policy; (4) Defendants would
negotiate in good faith with regard to the identification of the fifty
contiguous acres to be initially released to Thedford Crossing; and (5)
Defendants would not seek to impose additional terms not discussed by the
parties or required by the Contract or the Addendum, including imposing
restrictions on future releases of property as a condition to closing the
sale.  Plaintiff relied on such representations, which were false, and has
suffered damages as a result thereof.

 

            Texas
Business and Commerce Code, section 27.01 pertains to fraud in real estate
transactions.  Section 27.01 states, in pertinent part, as follows:

 

            Fraud in a transaction involving real estate or stock
in a corporation or joint stock company consists of a

 

                ….

                

                (2)  false promise to do an act, when
the false promise is

                 

                (A)  material;

                

                (B)  made with the intention of not
fulfilling it;

 

                (C)  made to a person for the purpose
of inducing that person to enter into contract; and 

 

                (D)  relied on by that person in
entering into that contract

 

Tex. Bus. & Com. Code Ann. §
27.01(a)(2) (Vernon 2009).  

            While
a party’s intent is determined at the time the party made the representation,
it may be inferred from the party’s subsequent acts after the representation is
made.  Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434 (Tex. 1986).  Intent is a fact question uniquely within the realm of the trier of fact
because it so depends upon the credibility of the witnesses and the weight to
be given to their testimony.  Id.  Failure to perform, standing
alone, is no evidence of the promissor’s intent not to perform when the promise
was made.  Id. at 435.  However, that fact is a circumstance to
be considered with other facts to establish intent.  Id.  Since
intent to defraud is not susceptible to direct proof, it invariably must be
proven by circumstantial evidence. Id.  “Slight circumstantial
evidence” of fraud, when considered with the breach of promise to perform, is
sufficient to support a finding of fraudulent intent.  Id.  No
pretense of performance by the defendant has been held to be a factor showing
lack of intent.  See id.  

 

 

Evidence Pertaining
to Tew’s Commission of Statutory Fraud

            In
the case at hand, Tew, by his contract with Thedford, made a promise that he
would, among other things, close the sale of 361 acres of land to Thedford. 
The conveyance of the 361 acres was a material portion of the transaction. 
Furthermore, because the promise was ultimately not fulfilled, the promise
could be logically construed as being a false one.  Moreover, there is evidence
of record that Thedford relied on Tew’s promise to convey the 361 acres of land
by securing the commitment of a financial partner, placing $2,000,000 into
escrow, and investing time and expense in preparation for closing the sale.

            With
regard to whether (1) Tew possessed intent not to fulfill his promise to
Thedford and (2) Tew acted so as to induce Thedford to enter into the contract,
we must consider what circumstantial evidence, if any, exists to support such
elements.  The most critical piece of evidence in this regard is Tew’s testimony
concerning his desire to never own property that was landlocked.  Specifically,
Tew testified as follows:

 

Q             Okay.  Did you kind of have it in your
mind an idea of how you wanted those releases to go?

 

A             Definitely.

 

Q             Was that something that you had decided
on your own, or had someone else told you that’s just how it had to be?

 

A             I really thought it was a matter of
common sense.  I often heard this stuff.  And matter of fact, it had came [sic]
up several years earlier.

                Where I live, the people that live
behind me wanted an easement to the road, and they didn’t have an easement that
was – and I told them that I was more than glad to use my driveway.

                But those are the kind of things that
you say why you want to make for certain you have access to property.  I did
not want anything landlocked.  That was kind of one of the things that was in
the back of my mind that was going on about that same time. 

 

 

In sum, Tew’s
desire to avoid owning landlocked property was based on not only what he described
as a matter of “common sense,” but also his personal experience involving
neighboring landowners becoming landlocked that had occurred “several years
earlier.”  Thus, it reasonably follows that Tew’s desire not to own landlocked
property existed at or before the time he signed the amendment.  

            The
record further reveals that within days of signing the amendment, Tew hired an
attorney, expressed his desire to her that he did not want the property to be
landlocked, and that the attorney immediately began working on the issue of
future releases of the property.  Finally, the record reflects that Tew
presented terms not embodied by the parties’ contract, each of which concerned
the future releases of property.  

            Tew
entered into the amendment, which did not include restrictions on the location
of property to be released in the future.  A reasonable juror could further
conclude that Thedford was more likely to enter into an agreement without terms
restricting the future release of property than to enter into an agreement that
included such terms.  Moreover, a reasonable juror could conclude that Tew had
no intent to fulfill his obligation to convey the property without Thedford’s
acceptance of his additional terms concerning the restriction of future
releases given his longstanding aversion to ownership of landlocked property. 
It reasonably follows that Tew could use the actions and expense undertaken by
Thedford between the time it signed the amendment and the November 15 closing
as leverage to force Thedford to accede to his additional terms.  It is equally
logical to conclude that Thedford may not have been so inclined to agree to
these restrictions had it not undertaken such additional effort and incurred
such expense.

            We
conclude that the foregoing evidence meets the threshold required to support a
jury submission on fraud pursuant to section 27.01.  Thus, we hold that the
trial court erred by granting a directed verdict against Thedford on its fraud
claim.  See Castillo, 972 S.W.2d at 68.  Thedford’s fourth
issue is sustained.

 

Disposition

            We
have sustained Thedford’s first issue and, as a result, did not consider his
second and third issues.  We have further sustained Thedford’s fourth issue. 
Having done so, we reverse the trial court’s judgment, and remand
the cause for a new trial.

                                                                                    Brian T. Hoyle

                                                                                             
Justice

 

Opinion delivered January 29,
2010.

Panel
consisted of Worthen, C.J., and Hoyle, J.

Griffith,
J., dissenting.

 

I respectfully
dissent.

            I would affirm the
judgment in the trial court, determining the location of the fifty acre plot is
a condition precedent to the contract.  However, the trial court erred in
granting Tew’s directed verdict on Thedford’s fraud claim.

            A condition precedent
is “an event that must happen or be performed before a right can accrue to
enforce an obligation.”  Centex Corp. v. Dalton, 840 S.W.2d 952,
956 (Tex. 1992) (citing Hohenberg Bros. Co. v. George E. Gibbons &
Co., 537 S.W.2d 1 (Tex. 1976)).  The Texas Supreme Court defined
“[c]onditions precedent to an obligation to perform [as] . . . those acts or
events, which occur subsequently to the making of contract, that must occur
before there is a right to immediate performance and before there is a breach
of contractual duty.”  Hohenberg Bros. Co., 537 S.W.2d at 3; Restatement of Contracts § 250 (1932). 


            This court’s opinion
states that the “essence of the parties’ agreement is the sale of real
estate.”  And that was true with the original contract, as well as section
(H)(1) of the amended contract.  Both the original agreement between Thedford
and Tew and the steps to execute section (H)(1) of the amended contract were very
straightforward:  Thedford Crossing, L.P., was to pay Tyler Rose Nursery, Inc.
and Joe Tew $6,000,000 for the purchase of the entire 361 acres of land.  In
such an agreement, where the land is clearly identified, and the amount to be
paid is stated, on the date of the closing the buyer gives the seller the
agreed purchase price, and the seller executes the necessary documents to
effectuate the transfer of land’s title to the buyer.

            However, as is found
in the August 2005 amended contract, under section (H)(2), the provision under
which Thedford and Tew proceeded, where there is not a direct money-for-deed
exchange but rather, a pay-out and a release of various portions of the 361
acres in  stages over a number of years, there are other considerations to be
addressed.  

Indeed, both
Thedford and Tew recognized that, with the piecemeal sale of such a large tract
of land over four years, some land is far more valuable than other portions of
the land in the initial stages of the land’s parsed out sale and development. 
For instance, road frontage property could be perceived as being more
beneficial for the buyer to acquire first, with which to both begin development
and, perhaps, to fund the later purchases.  One could assume that the more
highly desired land would be situated somewhere along one or at the nexus of
both of the two main highways that fronted the property, Interstate 20 and U.S.
Highway 69.  

By the explicit
terms of the August 2005 amended contract, Thedford and Tew did recognize that
the location of the initial fifty acres of land to be released would be
critical to the implementation of the contract to which they were agreeing,
specifically stated that the placement and determination of the exact
parameters of that parcel of land would have to be “mutually agreed upon” by
both Thedford and Tew.  By that provision, the two parties made that contract
term essential, requiring the resolution of the exact location of the land
before the parties could proceed with the sale.  Thedford and Tew both viewed
the issue of the location and shape of the initial fifty acres as so critical
to the contract that, despite the omission of numerous other seemingly
important conditions to the sale, this condition, the location of that fifty
acres, was the only term of the contract that specifically required mutual
agreement between the two parties before the release of the initial fifty acres
to Thedford.

The two parties
having contracted that they had to mutually agree to the location of that
initial fifty acres of land rendered that term a condition precedent. 
Therefore, I would uphold the trial court’s jury charge instruction providing
for a conditional response   to Jury Question 2, and would affirm the judgment
on that issue. 

However, there
was some conflicting evidence regarding Thedford’s fraud claim.  Because
Thedford did adduce some evidence which raised a fact issue, the trial court
erred in granting a directed verdict on the issue of Thedford’s fraud claim. 
Therefore, I would reverse on that issue.

 

                                                                        Sam Griffith

                                                                
Justice

(PUBLISH)









                [1]
The buyer formed Thedford Crossing, L.P. (“Thedford”) prior to the date set for
closing and assigned Thedford its rights under the contract.  For ease of
reference, we refer to the buyer as “Thedford.”





                [2]
The parties sought to execute closing documents on November 15, 2005. 
Throughout the opinion, we refer to this meeting as the “closing.”  The
parties’ reference to “final closing” in paragraph (H)(2)(d) of the agreement
is, from the plain language used, a date upon which the balance of the sales
price is due to Tew.  Any reference made to the November 15, 2009 date will
describe it as “final closing.”

 





                [3]
Thedford does not challenge the trial court’s take nothing judgment with regard
to his claims against John A. Williams, III and WH Group, Inc. d/b/a East
Texas Realty.





                [4]
Because we have sustained Thedford’s first issue and concluded that the trial
court’s error was harmful, we do not consider Thedford’s second and third
issues.